### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOLLY BERRY, | )<br>) |
| Plaintiff, | )<br>) No. 21-1017L |
| v. | )<br>) Filed: May 18, 2022 |
| THE UNITED STATES, | )<br>) |
| Defendant. | )<br>) |

### OPINION AND ORDER

Plaintiff Holly Berry, a landowner in Oklahoma, brings this Fifth Amendment takings claim related to a gaming facility built by the Cherokee Nation ("Nation") on land held in trust by Defendant. This trust land is located next to Plaintiff's property, and, according to Plaintiff, its development caused repeated flooding, erosion, and impoundment of water on her land. Defendant moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained below, because Plaintiff has failed to state a viable takings claim, Defendant's motion to dismiss is **GRANTED** and its previous motion to dismiss is **DENIED AS MOOT**.

### I. BACKGROUND

Plaintiff owns land in Tahlequah, Oklahoma. Pl.'s Am. Compl. ¶¶ 7, 15, ECF No. 7; Ex. A to Pl.'s Am. Compl., ECF No. 7-1; Ex. B to Def.'s Mot. to Dismiss Pl.'s Am. Compl., ECF No. 9-2. Plaintiff alleges that Defendant, utilizing its statutory authority under 25 U.S.C. § 5108 (the Indian Reorganization Act or "IRA"), took land adjacent to Plaintiff's property ("the Site") into trust for the Nation, which had proposed to develop and operate a gaming facility. ECF No. 7 ¶ 8.

On January 19, 2017, Defendant issued a letter approving the Nation's application for Defendant to acquire the Site in trust. *Id.* ¶ 11; Ex. A to Def.'s Mot. to Dismiss Pl.'s Am. Compl., ECF No. 9-1. The letter explained that "[t]hrough the exercise of tribal governmental authority, the Site will be subject to the Nation's management, protection, and conservation after it is acquired in trust." ECF No. 9-1 at 4. The letter also referenced an Environmental Assessment ("EA") conducted as part of Defendant's evaluation of the Nation's application. The EA concluded that development would "result in changes to the existing topography" and "create a greater area of impervious surfaces than currently exists on the project site, potentially increasing surface flow rates," but that a grading plan and a stormwater prevention plan would minimize impacts to the topography and stormwater flow. *Id.* at 14. The letter further explained that a Finding of No Significant Impact ("FONSI") was appropriate, requiring no Environmental Impact Statement. *Id.* Defendant published notice of the land acquisition in the Federal Register on August 11, 2017. Ex. B to Pl.'s Am. Compl., ECF No. 7-2.

Plaintiff alleges that the Nation's subsequent development of the gaming facility "significantly altered both the elevation and existing drainage patterns" of the Site and "substantially increased [its] impervious surfaces." ECF No. 7 ¶ 12. According to Plaintiff, due to these changes and "the failure to properly design and construct water runoff measures, Plaintiff's real property has suffered repeated severe flooding, erosion, and impoundment of water." *Id.* ¶ 13. Plaintiff also alleges that the Nation, to divert its own water runoff, entered Plaintiff's land, removed vegetation and soil, and dug a drainage ditch—all without her permission. *Id.* ¶¶ 14, 21.

Plaintiff contends that Defendant's trust relationship with the Nation as to the Site imposes duties and obligations on Defendant as trustee. *Id.* ¶ 18. Because the Site is used by the Nation for gaming, she alleges that Defendant's duties are expanded consistent with its regulatory role

2

under the Indian Gaming Regulatory Act ("IGRA"), which (among other things) gives Defendant the authority to order the temporary closure of a gaming facility that "is constructed, maintained, or operated in a manner that threatens the environment or the public health and safety, in violation of a tribal ordinance or resolution approved by the [National Indian Gaming Commission ("NIGC")] Chair." *Id.* ¶ 19 (internal quotation marks omitted) (quoting 25 C.F.R. § 573.4(a)(12)). Plaintiff asserts that "increased flooding, caused by Defendant's action and inactions, constitutes a taking of a flowage easement and detention pond upon the Plaintiff's property pursuant to the [Fifth] Amendment of the U.S. Constitution." *Id.* ¶ 22. Plaintiff seeks "just compensation in an amount equal to the value of the real property taken." *Id.* ¶ 23.

Plaintiff filed her Complaint on March 2, 2021. Pl.'s Compl., ECF No. 1. After Defendant moved to dismiss under RCFC 12(b)(1) and 12(b)(6) on June 2, 2021, Plaintiff filed an Amended Complaint on June 21, 2021.[1] ECF No. 7. On July 22, 2021, Defendant moved to dismiss the Amended Complaint under RCFC 12(b)(6), arguing that Plaintiff failed to state a takings claim upon which relief may be granted. Def.'s Mot. to Dismiss Pl.'s Am. Compl., ECF No. 9. Defendant contends that all of the acts alleged to have caused flooding on Plaintiff's property were taken by the Nation—not the United States, which cannot be liable under a takings theory for an alleged failure to act. *Id.* at 6–7. The parties completed briefing on September 10, 2021, and the Court heard oral argument on March 4, 2022.

---

[1] When Plaintiff filed the Amended Complaint, it superseded the original complaint and became the controlling pleading. *See Smith v. United States*, 120 Fed. Cl. 455, 460 (2015). As a result, Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 6, is moot. *Id.*

## II.  LEGAL STANDARDS

### A.  Jurisdiction of the Court of Federal Claims

The Court has jurisdiction under the Tucker Act to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This jurisdiction encompasses takings claims under the Fifth Amendment. *Hammitt v. United States*, 69 Fed. Cl. 165, 168 (2005) (citing *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987)), *aff'd*, 209 F. App'x 986 (Fed. Cir. 2006).

### B.  Standard of Review for Rule 12(b)(6) Motion

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion under RCFC 12(b)(6), the Court "assume[s] all well-pled factual allegations are true" and makes "all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion under RCFC 12(b)(6), the Court may consider the complaint itself, "the written instruments attached to it as exhibits, 'documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice.'" *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011).  This includes the contents of public documents and matters of public record. *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 262 (2013) (citing *Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999)).

### III.  DISCUSSION

Plaintiff's Amended Complaint must be dismissed because it fails to plausibly allege a takings claim.  As Defendant correctly argues, Plaintiff's allegations against the United States are founded on its alleged failure to prevent a third party (the Nation) from causing harm to Plaintiff's property, which is insufficient to constitute a taking.  Nor does Plaintiff plead an actionable claim (either under a takings theory or otherwise) for Defendant's alleged breach of fiduciary duty.

#### A.     Plaintiff Fails to Allege a Cognizable Taking.

"A taking occurs when governmental action deprives [an] owner of all or most of its property interest." *Nw. La. Fish & Game Pres. Comm'n v. United States*, 446 F.3d 1285, 1289 (Fed. Cir. 2006) (citing *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945)).  This may include government projects that result in the flooding of an individual's land. *See id.* at 1289–90 (citing *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. 166, 172 (1871)).  Such a claim usually "must be predicated on actions undertaken by the United States," not third parties such as a tribe, a foreign sovereign, or a local government. *Navajo Nation v. United States*, 631 F.3d 1268, 1274 (Fed. Cir. 2011); *see All. of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1482 (Fed. Cir. 1994); *see also Griggs v. Allegheny Cnty.*, 369 U.S. 84, 89–90 (1962).  Courts have occasionally recognized third-party takings claims, but only where the United States induces a third party to "act[] as the government's agent or the government's influence over the third party

was coercive rather than merely persuasive." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1154 (Fed. Cir. 2014) (collecting cases). "[T]akings liability does not arise from government inaction or failure to act." *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1361 (Fed. Cir. 2018).

Defendant argues that Plaintiff's Amended Complaint fails to state a takings claim because Plaintiff's allegations against Defendant are based on Defendant's *inaction*—specifically, the Government's alleged failure to prevent actions by the Nation (an independent third party) that caused her injuries. ECF No. 9 at 16–17. Defendant further claims that Plaintiff cannot impute the Nation's harmful actions to Defendant because she fails to allege that the Nation acted as Defendant's agent or under Defendant's coercive influence on a third-party takings theory.[2] *Id.* at 17–20.

The Court agrees with Defendant. As explained above, a taking necessarily involves *governmental* action. But Plaintiff fails to allege any governmental action that caused the injuries raised in her takings claim. Beyond conclusory assertions of liability, the Amended Complaint alleges only that Defendant acquired and held the Site in trust, not that that Defendant itself developed the Site and therefore caused the flooding on her land. *See* ECF No. 7 ¶¶ 18, 20–21. Instead, the Nation developed and operated the gaming facility on the Site, as permitted under the IRA and IGRA. *Id.* ¶ 8; *see* ECF No. 9-1. Indeed, the Amended Complaint alleges that the Nation, *not Defendant*, "commenced construction in 2016," ECF No. 7 ¶ 20, and "unlawfully entered upon

---

[2] At oral argument, Plaintiff conceded that the Nation did not act to develop the Site in the capacity of Defendant's agent or through a coercive relationship with Defendant. As such, the Court will not address this aspect of the motion other than to note its agreement with Defendant. *See Goodrich v. United States*, 434 F.3d 1329, 1334 (Fed. Cir. 2006) ("Whereas an agent is acting on behalf of, and usually at the direction of, his principal, a permittee is granted the option, but not the obligation, to engage in certain activities.").

[her] real property, removed vegetation, and dug a drainage ditch" without her permission, *id.* ¶ 21. These allegations do not state a plausible claim for relief, however, because "[t]he actor in a Fifth Amendment takings claim against the United States *must be the United States*." *L & W Constr. LLC v. United States*, 148 Fed. Cl. 417, 424 (2020) (emphasis added); *see, e.g.*, *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998). "In the flooding context, in particular, both Supreme Court precedent and [Federal Circuit] precedent have uniformly based potential takings claims on affirmative government acts." *St. Bernard Par.*, 887 F.3d at 1361 (rejecting takings claim based on flooding allegedly caused by the Government's failure to properly construct and maintain a navigation channel).

At oral argument, Plaintiff asserted that the "action" taken by Defendant here was its approval of the Nation's application, evaluation of which involved Defendant issuing the EA and FONSI, and Defendant's subsequent acquisition of the land in trust. *See* ECF No. 9-1 at 13–14. Plaintiff emphasized that these acts were the "proximate cause" of the damage to Plaintiff's land, as the Nation would not have developed the gaming facility had Defendant not approved the Nation's application and taken the Site into trust. Even with this framing, Plaintiff's takings claim fails. What Plaintiff points to is not direct governmental action effecting a taking, but rather agency decision-making that *permitted* the Nation's actions. While such agency decision-making may give rise to a claim in federal district court under the Administrative Procedure Act, *see Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 176 n.11 (2015), such a challenge is not actionable in this Court as a taking under the Fifth Amendment.

The Federal Circuit and other judges of this court have recognized as much, rejecting takings claims based on the Government's alleged failure to exercise (or properly exercise) its regulatory authority. *See, e.g.*, *Alves*, 133 F.3d at 1458; *L & W Constr.*, 148 Fed. Cl. at 422. For

7

example, in *Alves*, a landowner asserted a takings claim against the Bureau of Land Management ("BLM"), alleging that the BLM's failure to prevent the cattle of a neighboring landowner (the Danns) from grazing on Alves' land constituted a Fifth Amendment taking. *Alves*, 133 F.3d at 1455–56. The Alves property included public lands for which Alves held BLM grazing permits, and the BLM had previously secured an injunction against the trespass by the Danns' cattle. *Id.* at 1455. The Federal Circuit explained that the Government's ability to regulate the Danns' livestock did not "change the fact that the livestock are properly controlled in the first instance by the Danns, and that Alves' complaint is with the Danns, not the government." *Id.* at 1458 ("The government is not an insurer that private citizens will act lawfully with respect to property subject to governmental regulation merely because the government has chosen to regulate.").

Likewise, Plaintiff's characterization of Defendant's acts as the "proximate cause" of her injuries, in the absence of any direct governmental action or an agency-coercion theory, further shows that Defendant's involvement is simply too attenuated to support a takings claim. *See L & W Constr.*, 148 Fed. Cl. at 424 ("A mere causal link through the agency of a third force, perhaps appropriate in a tort context, is not sufficient to allege a taking."). Indeed, to the extent the Amended Complaint raises a tort claim against the Government for its alleged failure or refusal to stop the Nation from causing damage to Plaintiff's land, the Court would lack jurisdiction. *Bench Creek Ranch, LLC v. United States*, 149 Fed. Cl. 222, 226 (2020) (citing *St. Bernard Par.*, 887 F.3d at 1360–61), *aff'd*, 855 F. App'x 726 (Fed. Cir. 2021).

**B.      Plaintiff Fails to Allege Defendant Owes Her an Actionable Fiduciary Duty.**

In an attempt to sidestep the requirement of affirmative governmental action to support her takings claim, Plaintiff alleges that Defendant—as trustee of the Site—is subject to liability for its failure to perform fiduciary duties. The Court, however, agrees with Defendant that IGRA does

not create an enhanced trust duty with respect to the Site, nor could Plaintiff—who is not a beneficiary of the trust land—enforce any such duty. ECF No. 9 at 20–22. Such a claim, to the extent Plaintiff raises one, also fails.

In her response brief, Plaintiff asserts that Defendant and the Nation have more than a "bare trust" relationship with respect to the Site and that Defendant "very clearly 'has control or supervision over tribal monies and properties.'" Pl.'s Opp'n to Def.'s Mot. to Dismiss at 5, ECF No. 11 (quoting *Navajo Tribe of Indians v. United States*, 224 Ct. Cl. 171, 183 (1980)). She refers to multiple regulations implementing IGRA in support of this point, *id.* (citing 25 C.F.R. §§ 522.4(b)(3), 571.1, 571.5), including the class II gaming ordinance approval requirements and the NIGC's temporary closure authority, *id.* (citing 25 C.F.R. §§ 522.4(b)(7),[3] 573.4(a)(12)), as well as Supreme Court breach of trust cases, *id.* at 6 (citing *United States v. Mitchell*, 463 U.S. 206 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003)). Plaintiff asserts that this constellation of authorities necessarily implies a generalized duty of Defendant to protect the public from the actions of the Nation, which includes protecting Plaintiff from the alleged flooding, erosion, and impoundment of water on her property. *See id.* at 7–8 (citing *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831)). This argument, however, has no legal grounding.

While there exists a limited trust relationship between the United States and Indian tribes, this relationship alone does not "impose duties upon the United States such as those applicable to private trustees." *Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1297 (D.N.M. 1996) (citing *Mont. Bank of Circle, N.A. v. United States*, 7 Cl. Ct. 601, 613–14 (1985)), *aff'd*, 104 F.3d 1546

---

[3] Plaintiff's brief erroneously cites 25 C.F.R. § 522.4(b)(3). ECF No. 11 at 6–7. The quoted approval criteria requiring tribes to "construct, maintain and operate a gaming facility in a manner that adequately protects the environment and the public health and safety" is found at § 522.4(b)(7).

(10th Cir. 1997). "To impose such obligations, the substantive law at issue must unambiguously impose upon the United States detailed, comprehensive duties over Indian affairs." *Id.* (citing *Mont. Bank*, 7 Cl. Ct. at 614).

In *United States v. Mitchell*, for example, the Supreme Court found that federal statutes and regulations imposed fiduciary duties upon the United States as to certain tribal land upon which forest resources had "long been managed by the Department of the Interior, which exercise[d] 'comprehensive' control over the harvesting of Indian timber." 463 U.S. at 209 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980)). Specifically, these authorities tasked the Government with "daily supervision over the harvesting and management of tribal timber," *id.* at 222 (internal quotation marks omitted) (quoting *Bracker*, 448 U.S. at 147), and authorized the Secretary of the Interior "to invest tribal and individual Indian funds held in trust . . . if deemed advisable and for the best interest of the Indians," *id.* at 222, n.24 (citing 25 U.S.C. § 162a). In sum, "[v]irtually every stage of the process [was] under federal control." *Id.* at 222.[4]

As Plaintiff conceded at oral argument, none of the cases she relies on involved a takings claim, but rather claims that the Government breached a fiduciary duty owed to a tribe or individual tribal member. Plaintiff fails to allege that she is a similarly situated beneficiary. And even if she were such a beneficiary, Plaintiff also fails to allege anywhere near the same level of pervasive governmental control over the development of the Site or funds derived from the Nation's gaming

---

[4] The other breach of trust cases Plaintiff cites are likewise inapposite. In *White Mountain Apache Tribe*, the Supreme Court held that the United States possessed a duty to manage land and improvements on land held in trust for a tribe because the Government was statutorily authorized to and did in fact occupy a portion of the trust corpus. 537 U.S. at 475. *Navajo Tribe of Indians* involved trust fund accounting claims against the Government brought by a tribe, not an unrelated third party like Plaintiff. 224 Ct. Cl. at 190.

operation on the Site as in *Mitchell*, *White Mountain Apache Tribe*, or *Navajo Tribe of Indians*. This is because, as numerous other courts have found, IGRA does not allow the Government to exercise such elaborate, comprehensive control over tribal gaming operations necessary to create a fiduciary duty. *See, e.g.*, *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 259 F. Supp. 2d 783, 791 (W.D. Wis. 2003) ("Nothing in [IGRA] indicates any intention by Congress to recognize or create a fiduciary duty."), *aff'd*, 367 F.3d 650 (7th Cir. 2004); *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1201–02 (D. Minn. 1996); *Pueblo of Santa Ana*, 932 F. Supp. at 1297–98; *Redding Rancheria v. Salazar*, 881 F. Supp. 2d 1104, 1122 (N.D. Cal. 2012), *aff'd in part, rev'd in part on other grounds sub nom. Rancheria v. Jewell*, 776 F.3d 706 (9th Cir. 2015). Indeed, the regulatory provisions that Plaintiff cites, *see* ECF No. 11 at 5–6, merely reflect Defendant's oversight and enforcement authority—not direct governmental control and hands-on management of tribal gaming. *See* 25 U.S.C. § 2702(2)–(3) (declaring the policy of IGRA, including to "ensure that the Indian tribe is the primary beneficiary of the gaming operation" and to establish federal regulatory authority and federal standards for Indian gaming).

Finally, the Court finds no authority for Plaintiff's novel argument that Defendant has a generalized duty to protect the public from the Nation's actions. Plaintiff describes a "guardian"-"ward" relationship between Defendant and the Nation, respectively, and complains of a lack of alternative judicial remedies against the Nation. *See* ECF No. 11 at 6–8. But such a description of the Government's relationship with Indian tribes is inconsistent with IGRA's stated policy that tribal gaming be authorized "as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments," 25 U.S.C. § 2702(1), and it does not reflect the development of federal Indian law over the last century, *see McGirt v. Oklahoma*, --- U.S. ---, 140 S. Ct. 2452, 2467 (2020). To the extent that Plaintiff alleges that this guardian-ward formulation

creates an agency relationship within the takings context or otherwise makes the Nation's conduct actionable, any such theory is unsupported by existing authority.  Likewise, as Defendant correctly notes, a lack of available judicial remedies against the Nation, either in a tribal court or in federal court, does not imply the existence of a remedy against Defendant, expand Defendant's waiver of sovereign immunity, or otherwise bolster the validity of Plaintiff's claim.

## IV.  CONCLUSION

For these reasons, Defendant's Motion to Dismiss (ECF No. 9) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED** with prejudice for failure to state a claim pursuant to RCFC 12(b)(6).  The Court further **ORDERS** that Defendant's prior Motion to Dismiss (ECF No. 6) is **DENIED AS MOOT**.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.

Dated: May 18, 2022                                         */s/ Kathryn C. Davis*
                                                                                 KATHRYN C. DAVIS
                                                                                  Judge